UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT CAMPBELL #485906,

        Plaintiff,

v.

Case No. 2:07-cv-77
HON. GORDON J. QUIST

MICHAEL ENGELSGJERD, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Campbell #485906, an inmate at the Standish Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michael Engelsgjerd, M.D., and Pam Johnson, R.N. Plaintiff alleges in his complaint that on August 9, 2006, while Plaintiff was incarcerated at the Marquette Branch Prison (MBP), he filled out a Health Care Request form requesting to be seen by the doctor. On August 9, 2006, an unidentified nurse responded to the request stating that Plaintiff was "listed to see the MSP [medical service provider]." On August 14, 2006, Plaintiff made a second request to see the doctor, which was received by an unidentified nurse who dated the request August 15, 2006, but did not offer Plaintiff any instructions. On November 7, 2006, Plaintiff wrote another request for health care, asking to see a nurse about his feet. Plaintiff was advised that he was already scheduled to see the doctor. On November 17, 2006, Plaintiff file another health care request stating that he had an ingrown toenail on the big toe of his left foot and that he was in pain and would like to have it removed. On November 21, 2006, Plaintiff was informed that he was scheduled to see Nurse Sichiall.

Plaintiff alleges that on October 23, 2006, he wrote a grievance stating that he needed to see the doctor about having his ingrown left toenail removed and that the nurse was refusing to schedule him for the doctor. Nurse Kimsel responded by stating that Plaintiff had already had his toenail removed on October 24, 2006. Plaintiff filed a step II appeal, stating that he had been evaluated by a nurse on November 28, 2006, and had indicated that he would like to have his big right toenail removed. The step II response indicated that Plaintiff had been scheduled to see the medical service provider for further treatment.

Plaintiff wrote a second grievance on November 13, 2006, stating that he was being denied medical treatment for the ingrown big toenails on both feet and was experiencing severe pain. Plaintiff claimed that Defendant Englesgjerd was refusing to see Plaintiff to address the issue. Plaintiff again requested the removal of both his left and right big toenails. This grievance was rejected as duplicative. Plaintiff contends that the rejection was erroneous because the first grievance concerned the big toenail on his left foot, and the second grievance concerned the big toenails on both his feet. Plaintiff was placed on modified access to the grievance procedure following the rejection of his second grievance. Plaintiff wrote another grievance on November 21, 2006, complaining that the doctor was refusing to remove the big toenails on both his feet. Michelle Horton responded by stating that Plaintiff's left big toenail had already been removed. Plaintiff states that this is so, but that his left big toenail was growing back underneath the old nail and was causing him great pain and tearing through his skin. Plaintiff raised this issue in another grievance, which was rejected as duplicative. Finally, Plaintiff states he was able to exhaust his claims via grievance number MBP 06-110-200-828A1.

Plaintiff claims that Defendants violated his rights under the Eighth Amendment by refusing to remove his ingrown toenails. Plaintiff seeks damages and injunctive relief.

Presently before the Court is Defendant Engelsgjerd's Motion to Dismiss (docket #31), pursuant to Fed. R. Civ. P. 12(b)(6) for failure to demonstrate exhaustion of administrative remedies. Plaintiff has filed a motion for default judgment (docket #35) and has responded to the motion to dismiss (docket #38, #44, #56), and Defendant Engelsgjerd has replied to Plaintiff's responses (docket #42 and #47). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

In his motion to dismiss, Defendant Engelsgjerd contends that Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue with the staff member involved, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being

---

[1] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the Policy Directive was in effect at all times applicable to this lawsuit.

grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

The Supreme Court held in *Woodford*, 126 S. Ct. at 2387, that the PLRA exhaustion requirement requires "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 2386-388. It is a precondition to any suit challenging prison conditions. *Id.* Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative

- 5 -

remedies and the claim is barred. The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify this holding regarding "proper exhaustion." To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom the prisoner had not named in a Step I administrative grievance:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones,* 127 S. Ct. at 922-23.[2] The Court in *Jones* also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 924-26. Finally, the *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.*

In his motion to dismiss, Defendant Engelsgjerd refers to Plaintiff's complaint, in which Plaintiff claims that he filed grievances MBP 06-100-187-412d1, MBP 06-110-200-828a1,

---

[2]As "the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones*, 127 S. Ct. at 923. The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

MBP 06-101-874-12d1, and MBP 06-11-2008-280a regarding the issue of his ingrown toenails. The complaint alleges that MBP 06-100-187-412d1 was directed at a nurse for refusing to schedule Plaintiff to see the doctor. Plaintiff then filed MBP 06-110-200-828a1, in which he specifically named Defendant Engelsgjerd. This grievance was rejected as duplicative of MBP 06-100-187-412d1. Plaintiff then filed MBP 06-101-874-12d1 against "the doctor" for refusing to remove both of Plaintiff's big toenails, and MBP 06-11-2008-280a, which was rejected as duplicative. The only time that Defendant Engelsgjerd's name appears to have been mentioned was in step I of MBP 06-110-200-828a1, which was rejected as duplicative. Plaintiff alleges that this rejection was appealed to step III. Because Defendant Engelsgjerd was not mentioned by name in a "properly filed" grievance, he claims that he is entitled to dismissal without prejudice.

In response to Defendant Engelsgjerd's motion, Plaintiff states that the policy in effect during 2006 did not require him to specifically name each party in his grievance. Plaintiff is incorrect. As noted above, the policy in effect during the pertinent time period required that dates, times, places and names of all those involved in the issue being grieved are to be included in the step I grievance. However, as noted above, when Plaintiff attempted to file a grievance specifically naming Defendant Engelsgjerd, it was rejected as duplicative. The fact that Plaintiff's grievance was "duplicative" implies that he previously filed a grievance on the issues raised. Moreover, Plaintiff appealed the rejection of this grievance to step III. Plaintiff is not required to take any further action. Therefore, the undersigned concludes that Plaintiff's claims against Defendant Engelsgjerd are properly exhausted. Accordingly, Defendant Engelsgjerd is not entitled to dismissal for this reason.

Defendant Engelsgjerd also asserts that he is entitled to dismissal because the allegations set forth in Plaintiff's complaint do not rise to the level of an Eighth Amendment violation. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against

those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In his brief in support of the motion to dismiss, Defendant Engelsgjerd asserts that the allegations in Plaintiff's complaint amount to a mere disagreement with the medical treatment provided by Defendants in this case. Defendant Engelsgjerd notes that by his own admission, Plaintiff's left big toenail was removed on October 24, 2006. Plaintiff also concedes that he was seen by nursing personnel regarding his ingrown toenail issues but that, in his opinion, Plaintiff should have the big toenails removed on both feet.

In response to Defendant Engelsgjerd's motion to dismiss, Plaintiff states that the failure to remove his ingrown toenails have resulted in pain and infection. Plaintiff contends that he has attempted to see a doctor outside the prison system at his own expense, but prison officials

have refused to allow this. However, Plaintiff has included copies of grievance response to his amended complaint. The step I grievance response to LMF 07-05-2232-12E4 reveals that Plaintiff was seen by a doctor on May 17, 2007, and that there was no edema involving the toenails, no pain, and that the blood circulation to the toes and feet was good. (*See* Step I Response to LMF 07-05-2232-12E4, dated June 5, 2007, docket #52.) The step II response to that grievance indicates that Plaintiff had excision of nail bed by the medical provider on June 18, 2007, with follow-up care, and that he was scheduled for a re-check of his toenails. (*See* Step I Response to LMF 07-05-2232-12E4, dated June 5, 2007, docket #52.) These attachments do not support Plaintiff's assertions regarding the condition of his toes. Moreover, they support the finding that Plaintiff's complaint was merely with regard to the specific treatment he received, rather than a complete denial of treatment.

The undersigned notes that the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir.

Apr. 4, 1997). Therefore, the undersigned recommends dismissal of Plaintiff's complaint for failure to state a claim.[3]

In summary, in the opinion of the undersigned, Plaintiff's claims in this case are properly dismissed for lack of merit. Accordingly, it is recommended that Defendant Engelsgjerd's Motion for Dismissal (docket #31) be denied with regard to whether Plaintiff exhausted his administrative remedies, but granted on the merits and that this case be dismissed with prejudice in its entirety. Finally, should the court adopt the Report and Recommendation in this case, Plaintiff's pending motions (docket #30 and #35) are properly denied as moot.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
     TIMOTHY P. GREELEY
     UNITED STATES MAGISTRATE JUDGE

Dated:   August 29, 2008

---

[3] Although Defendant Johnson has not joined in the motion to dismiss, the reasons for dismissing Defendant Engelsgjerd apply equally to her. Therefore, Plaintiff's complaint is properly dismissed in its entirety.

- 11 -